IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

FILED

AUG 1 0 2022

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MARTIN J. WALSH, SECRETARY OF LABOR,
UNITED STATES DEPARTMENT OF LABOR,

        Plaintiff,

        v.

CIVIL ACTION NO. 2:21-cv-531

RUBEN LEON, JOSE R. FLORES,
JUAN P. GONZALEZ,

and

PLAZA AZTECA GREAT NECK, INC.,
PLAZA AZTECA JEFFERSON, INC.
d/b/a PLAZA AZTECA RESTAURANTE MEXICANO (4),
PLAZA AZTECA SUFFOLK, INC.,
PLAZA AZTECA GRANBY ST., INC.,
P.A. LASKIN, INC.,
PLAZA AZTECA SHORT PUMP, INC.,
DON VALERIO OF STERLING, INC.
d/b/a PLAZA AZTECA STERLING,
PLAZA AZTECA BROAD, INC.,
PLAZA AZTECA DOCK LANDING, INC.,
PLAZA AZTECA GAVIOTAS, INC.,
P.A. GLEN ALLEN, INC.,
PLAZA AZTECA HAMPTON, INC.,
MARTINEZ-HAYGOOD, INC.
d/b/a PLAZA AZTECA MEXICAN RESTAURANTE,
PA PROVIDENCE, INC.,
PA SEMINOLE INC.,
PLAZA AZTECA WARWICK, INC.
d/b/a PLAZA AZTECA (NEWPORT NEWS CI),
PA WAYNESBORO, INC.,
P.A. WESTCHESTER, INC.,
PA WILLIAMSBURG, INC.,
PLAZA AZTECA YORKTOWN, INC.,
PLAZA AZTECA INC.
d/b/a PLAZA AZTECA RESTAURANTE MEXICANO (1),
P.A. LEESBURG, INC.,
PLAZA AZTECA DENBIGH, INC.,
PLAZA AZTECA NORFOLK OUTLET, INC.,
P.A. MIDLOTHIAN, INC.,

**SALSA'S THIMBLE SHOALS INC.,**
**PA METHUEN, INCORPORATED,**
**REBECO MEXICAN BAR AND GRILL CORP.,**
**PLAZA AZTECA SEEKONK, INC.**
**d/b/a REBECO MEXICAN BAR & GRILL,**
**PLAZA AZTECA WASHINGTON MALL, INC.,**
**PLAZA AZTECA ROBINSON TOWNSHIP, INC.,**
**PLAZA AZTECA LANCASTER, INC.,**
**PLAZA AZTECA WYOMISSING, INC.,**
**PLAZA STATE COLLEGE, INC.,**
**TORO BUCKLAND, LLC**
**d/b/a TORO AZTECA AND PLAZA AZTECA MANCHESTER,**
**PLAZA AZTECA OF MANCHESTER, INC.,**
**PLAZA AZTECA NEWINGTON, INC.,**
**PLAZA AZTECA ENFIELD, INC.,**
**MONTEREY OF CALIFORNIA, INC.,**
**P. A. GREENVILLE INC.,**
**PA OBX, INC.,**
**PLAZA AZTECA ELIZABETH CITY, INC.,**
**PLAZA AZTECA SICKLERVILLE, INC.,**
**PLAZA AZTECA KING OF PRUSSIA, INC.,**
**PLAZA AZTECA EXTON, INC.,**
**PLAZA AZTECA KENNETT SQUARE, INC.,**
**PLAZA AZTECA PLYMOUTH MEETING, INC.,**

**all doing business as PLAZA AZTECA,**

     **Defendants.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants Ruben Leon, Jose R. Flores, Juan P. Gonzalez ("Individual Defendants"), and forty-seven (47) corporations doing business as Plaza Azteca's ("Plaza Restaurants" or "Corporate Defendants") (collectively, "Defendants") Motion to Dismiss. Defs.' Mot. Dismiss, ECF No. 11. Defendants move to dismiss Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor's ("Plaintiff" or "Secretary") Complaint in its entirety pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(2), and 12(b)(6).[1] *Id.* at 2; Defs.' Mem. Supp. Mot. Dismiss 2, ECF No. 12 ("Defs.' Mem. Supp."). The

---

[1] Defendants' pleadings regarding the bases for their Motion to Dismiss are inconsistent. In their initial

Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Defs.' Mem. Supp.; Pl.'s Mem. Opp'n to Defs.' Mot. Dismiss, ECF No. 17 ("Pl.'s Mem. Opp'n"); Defs.' Reply to Pl.'s Mem. Opp'n to Defs.' Mot. Dismiss, ECF No. 20 ("Defs.' Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. *See* E.D. Va. Local Civ. R. 7(J). For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.**

## I.   FACTUAL AND PROCEDURAL HISTORY

On September 21, 2021, Plaintiff filed a Complaint against Defendants to enjoin them from violating the provisions of Sections 6, 7, 11(c), 15(a)(2), and 15(a)(5) of the Fair Labor Standards Act of 1938, as amended ("FLSA" or "Act"). Compl. at 2-3 (citing 29 U.S.C. §§ 206, 207, 211(c), 215(a)(2), and 215(a)(5)). Relevant to Defendants' Motion to Dismiss and stated in the light most favorable to Plaintiff, the following facts are drawn from the Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Defendants operate a chain of Mexican restaurants throughout the United States that employ various servers, hosts, bartenders, busboys, runners, cooks, chefs, dishwashers, sous chefs, grill cooks, and guacamole preparers ("guacamoleros"). Compl. at ¶¶ 1, 10. The primary duties of these employees are to wait on, serve, and prepare food and drinks for Defendants' customers, and to maintain a clean kitchen and facility. *Id.* at ¶ 11. Defendant Ruben Leon, at all

---

pleading, Defendants claim to ground their Motion in Federal Rules of Civil Procedure 8(a)(1) and 12(b)(2), only. Defs.' Mot. Dismiss at 2. In their supporting memorandum of law, Defendants claim to ground their arguments in Federal Rules of Civil Procedure 8(a)(1), 12(b)(2), and 12(b)(6). Defs.' Mem. Supp. at 2. In the substance of their memorandum, Defendants argue that Plaintiff failed to allege particular facts in "violation of Rule 8's notice requirement." Defs.' Mem. Supp. at 19. Rule 8(a)(1) requires a claim for relief to contain "a short and plain statement of the grounds for the court's jurisdiction." FED. R. CIV. PROC. 8(a)(1). The Rule 8 notice requirement, on the other hand, falls under Federal Rule of Civil Procedure 8(a)(2). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." (cleaned up)). Accordingly, the Court understands Defendants' Motion to Dismiss to be pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(2), and 12(b)(6).

relevant times, resided in Virginia Beach, Virginia, and was an owner and/or officer of all of the Plaza Restaurants. *Id.* at ¶¶ 16-17. Leon made decisions regarding, and implemented, the pay practice and policies that applied to all of the Plaza Restaurants. *Id.* at ¶¶ 18-19. Defendant Jose Rafael Flores is, and at all relevant times was, an owner of Plaza State College, Inc. *Id.* at ¶ 23. Defendant Plaza State College, Inc. is a Pennsylvania corporation that operates a full-service restaurant and bar business in State College, Pennsylvania. *Id.* at ¶ 93. Defendant Juan Pablo Gonzalez is, and at all relevant times was, an owner of Plaza Azteca Myerstown, Inc. and Plaza Azteca Lancaster, Inc., and the manager at Plaza Azteca Wyomissing, Inc. *Id.* at ¶¶ 30-31. Defendant Plaza Azteca Wyomissing, Inc. is a Pennsylvania corporation that operates a full-service restaurant and bar in Reading, Pennsylvania. *Id.* at ¶ 119.

On or about July 8, 2016, Defendant Leon created PA Global, Inc., a Virginia corporation with a principal office and a registered office in Newport News, Virginia. *Id.* at ¶ 40. Leon is, and was during the relevant period, the president of PA Global, Inc. *Id.* at ¶ 41. Under Leon's direction, PA Global hired contractors to implement uniform practices across the Plaza Restaurants, including practices concerning payroll and timekeeping. *Id.* at ¶¶ 42-43. On or about December 2016, the Plaza Restaurants contracted with PA Global to, among other things, train management employees, procure contracts, and retain "professional services," including a common payroll service provider called Gerencia Virtual. *Id.* at ¶ 44. PA Global went on to secure common arrangements on behalf of the Plaza Restaurants, including medical insurance for some management employees, waste collection services, gift cards, and checking accounts. *Id.* at ¶ 45. The Plaza Restaurants sent records of employees' hours worked to Gerencia Virtual and utilized the service to prepare payrolls. *Id.* at ¶¶ 46-48.

Plaintiff alleges that, under the direction of and with oversight from Defendant Leon and

others, every Plaza Restaurant maintained a policy or practice of paying a predetermined pay amount to back-of-the-house employees, resulting in FLSA violations for overtime and, in some cases, minimum wage. *Id.* at ¶ 2. Defendants attempted to disguise this unlawful policy or practice by creating false payroll records that purported to show that employees received an overtime premium when, in reality, they did not. *Id.* at ¶ 3. Defendant Leon orchestrated, designed, and monitored the unlawful payment practices at the Plaza Restaurants. *Id.* at ¶ 5. Some of the Defendants also violated the FLSA in other ways at certain Plaza Restaurants, including by failing to pay a cash wage to employees who worked only for tips and by improperly seizing employee tips. *Id.* at ¶ 6. Accordingly, Plaintiff asserts 13 total claims, constituting: four claims against all Defendants; four claims against Defendants Leon, Flores, and Plaza State College, Inc.; one claim against Defendant Flores, only; three claims against Defendants Leon, Gonzalez, and Plaza Azteca Wyomissing, Inc.; and one claim against Defendant Gonzalez, only. Compl. at ¶¶ 52-137.

Specifically, Plaintiff asserts the following four claims against all Defendants:

| Claim 1. | Defendants' Uniform Practice of Paying a Predetermined Amount to Back-of-the-House Employees Violated the Overtime Provisions of the Act (Compl. at ¶¶ 52-71); |
|---|---|
| Claim 2. | Defendants' Uniform Practice of Paying a Predetermined Amount to Back-of-the-House Employees Violated the Minimum Wage Provisions of the Act (Compl. at ¶¶ 72-78); |
| Claim 3. | Defendants Violated the Recordkeeping Provisions of the Act (Compl. at ¶¶ 79-84); and |
| Claim 4. | Defendants' Violations of the Act Were Willful (Compl. at ¶¶ 85-92). |

Plaintiff asserts four claims against Leon, Flores, and Plaza State College, Inc.:

| Claim 5. | Additional Violations of the Minimum Wage Provisions of the Act (Compl. at ¶¶ 94-102); |
|---|---|

Claim 6.    Violations of the Prohibition on Taking Tips after March 23, 2018 (Compl. at ¶¶ 103-04);

Claim 7.    Additional Violations of the Overtime Provisions of the Act (Compl. at ¶¶ 105-23); and

Claim 8.    Additional Violations of the Recordkeeping Provisions of the Act (Compl. at ¶¶ 113-17).

Plaintiff asserts one claim against Flores, only:

Claim 9.    Additional Violations of the Minimum Wage, Overtime and Recordkeeping Provisions of the Act (Compl. at ¶ 118).

Plaintiff asserts three claims against Leon, Gonzalez, and Plaza Azteca Wyomissing, Inc.:

Claim 10.   Additional Violations of the Minimum Wage Provisions of the Act (Compl. at ¶¶ 120-25);

Claim 11.   Additional Violations of the Overtime Provisions of the Act (Compl. at ¶¶ 126-32); and

Claim 12.   Additional Violations of the Recordkeeping Provisions of the Act (Compl. at ¶¶ 133-36).

Finally, Plaintiff asserts one claim against Gonzalez, only:

Claim 13.   Additional Violations of the Minimum Wage, Overtime and Recordkeeping Provisions of the Act (Compl. at ¶ 137).

Plaintiff prays for injunctive relief, compensatory relief, back wages, and liquidated damages or, alternatively, prejudgment interest. Compl. at 25-26. Defendants move to dismiss Plaintiff's Complaint, in its entirety and with prejudice, pursuant to Federal Rules of Civil Procedure 8(a)(2), 12(b)(2), and 12(b)(6).[2] Defs.' Mot. Dismiss at 2; Defs.' Mem. Supp.

## II.    LEGAL STANDARD

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for the dismissal of an action against a

---

[2] *See supra* note 1.

6

party where the court lacks personal jurisdiction. Fed. R. Civ. Proc. 12(b)(6). Personal

jurisdiction must be authorized both by the forum state's long-arm statute and by the Due

Process Clause of the Fourteenth Amendment, which requires that a defendant have sufficient

"minimum contacts" with the forum state "such that the maintenance of the suit does not offend

traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310,

316 (1945) (internal quotations and citations omitted); *see also CFA Inst. v. Inst. of Chartered

Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Since Virginia's long-arm statute

extends to the full scope of the Due Process Clause, the inquiries in this case are one and the

same. *CFA Inst.*, 551 F.3d at 292; *see also Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d

273, 277 (4th Cir. 2009).

 To determine whether "minimum contacts" exist, a plaintiff must show that the defendant

"purposefully directed his activities at the residents of the forum" and that plaintiff's cause of

action "arises out of or relate to" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

472 (1985) (internal quotations and citations omitted). In other words, this inquiry protects a

defendant from being forced to defend himself in a forum where he did not anticipate facing suit.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Specifically, the analysis

must focus "on the relationship among the defendant, the forum, and the litigation." *Walden v.

Fiore*, 671 U.S. 277, 283 (2014); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California,

San Francisco Cnty.*, 137 S. Ct. 1773, 1781 (2017) ("In order for a court to exercise specific

jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying

controversy, principally, [an] activity or an occurrence that takes place in the forum State."

(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011))).

 Under Rule 12(b)(2), a defendant "must affirmatively raise a personal jurisdiction

challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). The plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). In considering whether a plaintiff has met this burden, a court may look beyond the complaint to affidavits and exhibits to assure itself. *Grayson*, 816 F.3d at 269. Yet, "when the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make prima facie showing." *Id.* at 268. Further, a court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs*, 886 F.2d at 676.

A defendant may be subject to general or specific jurisdiction, but only the latter is relevant here. *See* Pl.'s Mem. Opp'n at 2 ("[T]he Secretary establishes a prima facie case of specific personal jurisdiction over all Defendants."). With regard to the due process requirements for asserting specific personal jurisdiction, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") requires consideration of three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (internal quotations omitted), *cert. denied*, 537 U.S. 1105 (2003).

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the

claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007) (cleaned up). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

9

## III.  DISCUSSION

### A.  Personal Jurisdiction Over Non-Resident Individual and Corporate Defendants

#### 1.  Non-Resident Individual Defendants

As a preliminary matter, the 50 named Defendants all fall into two of four categories: individual, corporate, resident, and non-resident. First, there are three Individual Defendants – Leon, Flores, and Gonzalez – with known and unknown domiciles and connections to Virginia. Compl. at ¶¶ 16-37. Defendant Ruben Leon, at all relevant times, resided in Virginia Beach, Virginia, and owned and/or was an officer of all of the Plaza Restaurants. *Id.* at ¶¶ 16-17. Defendant Jose Rafael Flores, at all relevant times, was an owner of Plaza State College, Inc., which is a Pennsylvania corporation located in Pennsylvania. *Id.* at ¶¶ 23, 93. Defendant Juan Pablo Gonzalez is, and at all relevant times was, an owner of Plaza Azteca Myerstown, Inc. and Plaza Azteca Lancaster, Inc., and the manager at Plaza Azteca Wyomissing, Inc., all of which are Pennsylvania corporations and/or located in Pennsylvania *Id.* at ¶¶ 12, 30-31, 119.

Defendants do not contest the Court's personal jurisdiction over Defendant Leon, but do contest its jurisdiction over Defendants Flores and Gonzalez. Defs.' Mem. Supp. at 3, 9-10. As Defendants note, the Complaint is devoid of any information regarding where Defendants Flores and Gonzalez are domiciled, let alone any connections they have to the Commonwealth of Virginia. *Id.* In other words, the Court has no information from which it can analyze the relationship between these two Defendants, this forum, and the instant litigation. *Walden*, 671 U.S. at 283. Moreover, Plaintiff fails to mention either Defendant in its memorandum in opposition. *See* Pl.'s Mem. Opp'n.

The Court therefore finds that Plaintiff has failed to meet its burden of proving, by a preponderance of the evidence, that the Court has personal jurisdiction over Defendant Flores

and Defendant Gonzalez. *Grayson*, 816 F.3d at 267; *Combs*, 886 F.2d at 676. Accordingly,

Defendant Jose R. Flores and Defendant Juan P. Gonzalez are hereby **DISMISSED** as

defendants in this action. Further, Plaintiff's claims solely against each Defendant – Claim 9

against Defendant Flores (Compl. at ¶ 118) and Claim 13 against Defendant Gonzalez (Compl. at

¶ 137) – are also **DISMISSED**.

### 2. Non-Resident Corporate Defendants

Second, there are 47 Corporate Defendants, all doing business as Plaza Azteca. Compl. at

¶ 12. There are 21 non-resident Corporate Defendants that are located outside of the forum state

of the Commonwealth of Virginia. *Id.* at ¶ 12(a)-(u) ("Non-Resident Corporate Defendants" or

"NRCDs"). There are also 26 resident Corporate Defendants that are located inside the forum

state of the Commonwealth of Virginia. *Id.* at ¶ 12(v)-(uu) ("Resident Corporate Defendants" or

"RCDs"). Defendants move to dismiss Plaintiff's Complaint against the 21 Non-Resident

Corporate Defendants for lack of personal jurisdiction. Defs.' Mem. Supp. at 3-4, 8-17.

Specifically, Defendants argue that the Complaint is devoid of any connection between the

NRCDs and Virginia. *Id.* at 4-6. Plaintiff, on the other hand, argues that "[a]ll Defendants are

subject to specific personal jurisdiction . . . based on their business activities within the

Commonwealth." Pl.'s Mem. Opp'n at 7.

### a. *Specific Jurisdiction*

In support of its attempt to establish specific personal jurisdiction, Plaintiff proffers

various jurisdictional allegations and facts. Pl.'s Mem. Opp'n at 3-5. Since the Court has already

dismissed the individual non-resident Defendants and Defendants do not challenge the personal

jurisdiction of the resident Defendants, the Court focuses its analysis on whether it has specific

personal jurisdiction over the Non-Resident Corporate Defendants.

To determine whether asserting personal jurisdiction over a defendant complies with due process requirements, the Court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan*, 293 F.3d at 712 (internal quotations omitted). "If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three." *Consulting Eng'rs*, 561 F.3d at 278.

### i.   Purposeful Availment

"The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." *Consulting Eng'rs*, 561 F.3d at 278. For defendants that are corporations, courts have considered various nonexclusive factors, including:

> (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum.

*Id.* (internal citations omitted). Plaintiff offers four ways that the NRCDs purposefully availed themselves of the laws of Virginia: (1) collaborating with a Virginia resident; (2) contracting with a Virginia corporation; (3) utilizing a Virginia payroll service company; and (4) operating

12

under agency principles that connect them to Virginia.[3] Pl.'s Mem. Opp'n at 9-13.

First, Plaintiff argues that "[t]he Defendant Plaza Restaurants have engaged in extensive collaboration with Defendant Leon in Virginia, who created and implemented the uniform compensation and employment practices at issue in this case across all restaurants." Pl.'s Mem. Opp'n at 10. The allegations in the Complaint to which Plaintiff cites in support, however, *all* discuss the actions that Defendant Leon took, *alone*, with no mention whatsoever of any action that the NRCDs took. *See* Compl. at ¶¶ 4-5, 18-22, 42. Indeed, Plaintiff's allegations describe how Defendant Leon "created PA Global, Inc., a Virginia corporation," "orchestrated, designed and monitored the unlawful payment practices at the Plaza Restaurants," "made decisions regarding pay practices and policies," "implemented those practices and policies," and directed PA Global to "hire[] contractors to implement uniform practices." *Id.* The allegations Plaintiff cites to in its jurisdictional allegations and facts are slightly more supportive because they allege actions that the NRCDs took, but do not specify if and how those actions connect to Virginia. *See* Compl. at ¶¶ 13-15, 39 (alleging Defendants created, adopted, and maintained common policies and procedures, and are engaged in the commercial restaurant business for profit).

As Defendants note, to "collaborate" means "to work jointly with others or together" or "to cooperate with or willingly assist."[4] Defs.' Reply at 5-6. In other words, collaboration contemplates participation by more than one party. Plaintiff's primary reliance on the actions that Defendant Leon took alone therefore do not support that the NRCDs actively collaborated or

---

[3] Defendants initially understood Plaintiff's allegations that Defendants constitute a "single enterprise" under the FLSA to be an asserted basis for personal jurisdiction over the non-resident Defendants in the Complaint. Defs.' Mem. Supp. at 12-17. In response, Plaintiff clarifies that it does not rely on the single enterprise theory of liability as a basis to establish personal jurisdiction. Pl.'s Mem. Opp'n at 17-18. The relevant single enterprise theory allegations do not assert any jurisdictional claims, although the Court acknowledges that the overall structure of the Complaint is unusual and, at times, confusing. *See* Compl. at ¶¶ 38-51. Ultimately, because Plaintiff bears the burden of demonstrating that the Court has personal jurisdiction and they do not offer this theory to establish such, the Court need not consider it. *Grayson*, 816 F.3d at 267.

[4] *Collaborate*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/collaborate (last visited Aug. 2, 2022).

themselves sought out the protection of the laws of Virginia. *See Burger King*, 471 U.S. at 475 ("This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." (cleaned up)). The focus of the purposeful availment inquiry, rather, is on the actions of the defendant over whom personal jurisdiction is in question. *See id.* ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that creates a substantial connection with the forum State." (emphasis in original) (internal quotations omitted)).

The case law Plaintiff cites to support its theory is also inapplicable because the Fourth Circuit in both cases analyzed the actions that the corporate defendants took themselves. *See Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012) (per curiam) (finding purposeful availment where defendant repeatedly reached into Virginia to transact business by collaborating with plaintiff's employee, which gave rise to plaintiff's claims); *CFA Inst.*, 551 F.3d at 295 (finding purposeful availment where defendant purposefully reached into Virginia to transact business, initiated contact with plaintiff in Virginia, had a visit that sparked ongoing business transactions, and invoked benefits and protections of Virginia law for thirteen years). Here, for this argument, Plaintiff does not offer any information regarding any action the NRCDs took, let alone any analysis analogizing these cases. Pl.'s Mem. Opp'n at 10. At best, the support offered for Plaintiff's collaboration theory demonstrates that the NRCDs operated under the direction of Defendant Leon, a Virginia resident, and created and maintained common policies at his direction. A mere association with a forum state resident without more, even if he is a corporate agent, is insufficient to establish that the NRCDs purposefully availed themselves. *See Int'l Shoe*, 326 U.S. at 317 ("[I]t has been generally recognized that the casual

14

presence of the corporate agent or even his conduct of single or isolated items of activities in a

state in the corporation's behalf are not enough to subject it to suit on causes of action

unconnected with the activities there.").

Second, Plaintiff argues purposeful availment is satisfied because "Defendants' [sic]

contracted with PA Global, a Virginia corporation with an office in Virginia, to implement

uniform practices across the Plaza Restaurants, including practices that resulted in the FLSA

violations at issue here." Pl.'s Mem. Opp'n at 10. The Complaint alleges that, "[o]n or about

December 2016, the Plaza Restaurants contracted with PA Global, Inc. . . . [and] PA Global, Inc.

went on to secure common arrangements on behalf of the Plaza Restaurants." Compl. at ¶¶ 44-

45. The terms of the contract provide that PA Global, the "Contractor," "agree[d] to perform the

following services for the Client": implement a customized workflow system; perform

management training; provide counsel and support in implementing new restaurant equipment;

help create or update the restaurant menu; aid in negotiating with vendors and financial services

(insurance companies, banks, suppliers, etc.); act as a resource for finding quality professional

services (attorneys, accountants, chefs, architects, etc.); conduct research into possible locations

for future expansion; and develop new marketing strategies. Pl.'s Mem. Opp'n at Ex. I.[5]

The contract also states that the "agreement will be governed by and construed in

accordance with the laws of the state of Virginia" and "will terminate either when the Contractor

has achieved a satisfactory completion of the services described in the agreement, or when either

party decides to terminate" based on specified criteria. Id. The Client agreed to pay the

Contractor $300.00 on a monthly basis, subject to change based on the services provided that

month, and that the Contractor would send an invoice for services rendered at the end of each

---

[5] The Court may look beyond the Complaint to affidavits and exhibits to determine whether Plaintiff has met its burden of proving personal jurisdiction. *Grayson*, 816 F.3d at 269.

month. *Id.* Ruben Leon signed the contract on behalf of the "Client" as the "legal representative."

*Id.* However, the contract only lists the following NRCDs as Clients ("Contracting NRCDs"):

1. PA Greenville Inc. (Greenville, NC);
2. Plaza Azteca Elizabeth City Inc. (Elizabeth City, NC);
3. Plaza Azteca Kennett Square Inc. (Kennett Square, PA);
4. Plaza Azteca Sicklerville Inc. (Gluocester Township, NJ);
5. Plaza Azteca Wyomissing Inc. (Wyomissing, PA);
6. Plaza State College Inc. (State College, PA);
7. Monterey of California Inc. (Lexington Park, MD);
8. PA OBX Inc. (Kill Devil Hills, NC);
9. Plaza Azteca Exton Inc. (Exton, PA);
10. Plaza Azteca King of Prussia Inc. (King of Prussia, PA);
11. Plaza Azteca Plymouth Meeting Inc. (Plymouth Meeting, PA); and
12. Plaza Azteca Robinson Township Inc. (Pittsburgh, PA).

*Id.* at 1-2.[6] The remaining nine NRCDs are not mentioned in the contract. *Id.*

Defendants acknowledge that these twelve NRCDs entered into a contract with a Virginia corporation, but maintain that they "never reached into Virginia to transact business or directed their activities at Virginia" and the contract only provided "generalize[d] services that would take effect" outside of Virginia. Defs.' Reply at 11-12. This challenge is unpersuasive because, as the record demonstrates, it is not the act of entering into the contract alone that establishes personal jurisdiction here; rather, "there is additional contact between the party and the forum state." *New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 693 (E.D. Va. 2019); *see also Christian Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 216 (4th Cir. 2001) ("A prospective defendant need not initiate the relevant 'minimum contacts' to be regarded as purposefully availing himself of the privileges of conducting activity in the forum state."). The contract establishes, specifically, that the Contracting NRCDs: have a legal representative, Ruben Leon, in Virginia that is authorized to and has engaged them in

---

[6] The contract also lists "Plaza Azteca Lincoln Plaza LLC" of Worcester, Massachusetts, as a client, but Plaintiff does not name this entity as a defendant. Pl.'s Mem. Opp'n at Ex. I, at 2.

business activities; entered into a contract with a Virginia corporation; contractually agreed that Virginia law would govern; make payments to the Virginia corporation on a monthly basis; and agreed to continuously engage the services of that Virginia corporation for an indefinite period of time. *See* Pl.'s Mem. Opp'n at Ex. I.

Moreover, Defendants' assertions do not excuse them from this Court's jurisdiction because this inquiry "is necessarily fact-based," *CFA Inst.*, 551 F.3d at 294, and cannot "turn on 'mechanical' tests." *Burger King*, 471 U.S. at 478 (quoting *Int'l Shoe*, 326 U.S. at 319). Indeed, the facts Defendants rely on in opposition are just some of the numerous non-exclusive factors this Court considers. *Consulting Eng'rs*, 561 F.3d at 278. In construing the pleadings in favor of Plaintiff and drawing inferences in favor of jurisdiction, the Court finds that Plaintiff has established by a preponderance of the evidence that the Contracting NRCDs purposefully availed themselves of the privileges of conducting business under the laws of Virginia by entering into an indefinite, continuous contractual relationship governed by Virginia law with a Virginia corporation. *Combs*, 886 F.2d at 676; *see also Burger King*, 471 U.S. at 475-76 ("Thus where the defendant . . . has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." (internal citations omitted)); *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957) ("It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State."); *CFA Inst.*, 551 F.3d at 293 ("Indeed, a single act by a defendant can be sufficient to satisfy the necessary 'quality and nature' of such minimal contacts.").

Third, to establish purposeful availment, Plaintiff focuses on the fact that "Defendant Plaza Restaurants utilized a Virginia payroll service provider, Gerencia Virtual." Pl.'s Mem. Opp'n at 11. Unlike the contract with PA Global, the only fact relevant to purposeful availment

that Plaintiff provides is that "Defendants engaged the Virginia payroll company beginning in 2016 to handle the payroll for all the employees at each of the Plaza locations." *Id.* (cleaned up). Plaintiff also relies on how its claims arise out Defendants' relationship with Gerencia Virtual, but this is an issue the Court considers after, and only if, purposeful availment is established. *See id.* at 12; *but see Consulting Eng'rs*, 561 F.3d at 278. Thus, while the NRCDs' use of a forum state service provider may serve to bolster Plaintiff's purposeful availment argument when considered alongside other factors, it is insufficient to establish such on its own. *See Burger King*, 471 U.S. at 468 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." (emphasis in original)).

Fourth and finally, Plaintiff argues that the Court "may rely on agency principles to exercise specific personal jurisdiction." Pl.'s Mem. Opp'n at 12. However, Plaintiff offers this avenue for the Court to consider without engaging in the proper analysis, let alone stating whether the NRCDs are the agents or principals under this theory. For analytical purposes, the Court will assume that the NRCDs are the principals and Leon is their agent based on Plaintiff's description: "Since Defendant Leon is located in and carries out activities on behalf of the Plaza Restaurants from Virginia, the non-resident Defendants are subject to this Court's reach." Pl.'s Mem. Opp'n at 12-13; *see Int'l Shoe*, 326 U.S. at 316 ("Since the corporate personality is a fiction . . . the state of its origin can be manifested only by activities carried on in its behalf by those who are authorized to act for it.").

Yet, the case law to which Plaintiff cites in support does not establish jurisdiction over the NRCDs; it establishes jurisdiction over Defendant Leon. Plaintiff first relies on *Daimler AG v. Bauman*, which noted that "[a]gency relationships . . . may be relevant to the existence of

18

*specific* jurisdiction." 571 U.S. 117, 135 n. 13 (2014) (emphasis in original). The proposition in *Daimler* is inapplicable, however, because the Supreme Court concluded that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." *Id.* Plaintiff offers no evidence that the NRCDs directed Defendant Leon or anyone else to take any action at all, let alone in Virginia. Rather, Plaintiff explicitly claims that, although "[e]ach Plaza Restaurant is a separate corporate entity . . . Defendant Leon operates the Plaza Restaurants as a spoke and wheel business model—the direction and operational decisions (including employment policies and practices) originate with him as the hub in Virginia and these decisions travel outward to each Plaza Restaurant." Pl.'s Mem. Opp'n at 1.

In other words, according to Plaintiff's own allegations, the NRCDs do not exercise the requisite level of control to be haled into court as principals on account of the actions that their agent, Defendant Leon, took on their behalf. *See Burger King*, 471 U.S. at 475; *Whitfield v. Whittaker Mem'l Hosp.*, 210 Va. 176, 181 (1969) ("In determining whether a person is the agent of another, it is necessary that he not only be subject to the latter's control, or right of control, with regard to the work to be done and the manner of performing it, but the work has to be done on the business of the principal or for his benefit."); *cf. Int'l Shoe*, 326 U.S. at 317. The other cases that Plaintiff relies on face the same logical flaw and are therefore also inapposite. *See Prototype Prods., Inc. v. Reset, Inc.*, 844 F. Supp. 2d 691, 695 (E.D. Va. 2012) ("The central question the Court must answer is whether Laser Devices, ATK, and Lewis Machine are agents of Reset whose actions essentially become Reset's action."); *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 722 (D.S.C. 2007) (finding that an individual was acting as a corporation's agent such that the agent's contacts with the forum state were attributable to the corporation itself); *Giannaris v. Cheng*, 219 F. Supp. 2d 687, 693 (D. Md. 2002) (finding that a "court may exercise

19

personal jurisdiction over a non-resident corporation based on the acts of its agents in Maryland" based on Maryland's long-arm statute).

Thus, the Court finds that only the Contracting NRCDs have purposefully availed themselves of the laws of Virginia and continues its specific personal jurisdiction analysis with respect to them, only. *Consulting Eng'rs*, 561 F.3d at 278. The Court therefore finds that it lacks specific personal jurisdiction over the nine non-contracting Non-Resident Corporate Defendants, who are hereby **DISMISSED**.

### ii.     Plaintiff's Claims and Defendants' Forum Activities

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forum state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278–79. "The analysis here is generally not complicated" and, "[w]here activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *Tire Eng'g*, 682 F.3d at 303 (cleaned up).

The Court finds that Plaintiff's claims arise out the Contracting NRCDs' contacts with Virginia. Specifically, in construing the relevant pleadings in the light most favorable to Plaintiff, *Combs*, 886 F.2d at 676, the record demonstrates that the "genesis of the dispute" is in Virginia. *Tire Eng'g*, 682 F.3d at 303. Indeed, the Contracting NRCDs' contract, governed by Virginia law, with PA Global, a Virginia corporation, is alleged to be one of the sources of the uniform implementation of the policies and practices that gave rise to Plaintiff's claims. *See* Compl. at ¶¶ 41-45. The Contracting NRCDs' relationship with Gerencia Virtual, another Virginia corporation, to prepare payrolls is alleged to be another source of this implementation. *Id.* at ¶¶ 67-68 ("At the direction of Defendants, the payroll provider often manipulated the rates of pay or hours worked, or added a non-discretionary bonus (not included in the regular rate of pay).

Those manipulations made it appear on payroll records as though Defendants were paying

overtime compensation to employees in compliance with the Act, but instead, employees

typically received a predetermined 'net' amount."). The second prong is therefore "easily

satisfied." *Tire Eng'g*, 682 F.3d at 303.

### iii.   Constitutional Reasonableness

Finally, in evaluating whether the exercise of specific personal jurisdiction over the

Contracting NRCDs is constitutionally reasonable, the Court considers various factors "to ensure

the appropriateness of the forum," including:

> (1) the burden on the defendant of litigating in the forum; (2) the
> interest of the forum state in adjudicating the dispute; (3) the
> plaintiff's interest in obtaining convenient and effective relief; (4)
> the shared interest of the states in obtaining efficient resolution of
> disputes; and (5) the interests of the states in furthering substantive
> social policies.

*Consulting Eng'rs*, 561 F.3d at 279; *see also World-Wide Volkswagen*, 444 U.S. at 292. The

ultimate purpose of this analysis is to "ensure[] that litigation is not so gravely difficult and

inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent."

*CFA Inst.*, 551 F.3d at 296 (cleaned up).

First, any burden on the Contracting NRCDs to litigate in Virginia would be minor. The

only relevant contentions Plaintiff offers in support of this argument are that all Defendants have

the same "counsel to look out for the non-resident Defendants' interests, and certain of

Defendants' key witnesses [are] located in the forum state." Pl.'s Mem. Opp'n at 15. The

remainder of Plaintiff's analysis demonstrates why Virginia is a convenient and relevant forum

to consider its claims. *See id.* At the same time, the Contracting NRCDs' only argument in

response is that "whether it is a burden for Defendant Leon to litigate in Virginia is irrelevant to

the analysis." Defs.' Reply at 14. Yet, the Contracting NRCDs themselves do not claim they face

21

any burden litigating in this forum nor elaborate on what specific facts *are* relevant to this case. *Id.* Since all Defendants, including the Contracting NRCDs, have "been able to secure [the same] counsel to represent its interests," and offer no information to suggest otherwise, the Court finds that "its litigation burden is thus no more substantial than that encountered by other entities that choose to transact business in Virginia." *CFA Inst.*, 551 F.3d at 296.

Second, Virginia has a substantial interest in adjudicating this dispute. As Plaintiff notes, "Virginia has the closest ties to the facts and issues presented" because it is the genesis of the dispute. Pl.'s Mem. Opp'n at 16. Defendants misunderstand the purpose of this prong when they argue that, "[i]f Virginia indeed has a 'substantial interest in adjudicating this dispute,' than [*sic*] the state is more than capable of filing suit to protect its interest." Defs.' Reply at 15. The question here is not whether the forum state is the proper party to bring suit, but rather whether the forum state has a substantial interest in *adjudicating* the dispute. *See CFA Inst.*, 551 F.3d at 296-97. Moreover, the fact that the NRCDs themselves are not Virginia corporations does not render personal jurisdiction over them constitutionally unreasonable since the Commonwealth nonetheless maintains a "valid interest in the resolution of the grievances of its citizens and businesses," with whom the NRCDs are intimately connected, especially as it pertains to the claims at issue. *Id.* at 297. Further, although Plaintiff's claims are not based on the law of the Commonwealth, Virginia nonetheless has an interest in ensuring that federal laws "are not violated within its borders." *Tire Eng'g*, 682 F.3d at 305.

Third, Plaintiff argues it has an "efficiency-related interest in litigating this case in a single forum that is convenient for the parties." Pl.'s Mem. Opp'n at 16. Defendants' point that Plaintiff "initiated a similar suit in Pennsylvania against another brand of restaurants partly owned by Defendant Leon" is irrelevant to Plaintiff's interest in bringing claims against *this*

brand of restaurants that are majority owned by Defendant Leon.[7] Defs.' Reply at 15. Indeed, none of the Defendants, including Defendant Leon himself, are named as defendants in that suit. *See Walsh v. La Tolteca Wilkes Barre, Inc. et al.*, 3:21-cv-1628 (M.D. Pa. filed Sept. 21, 2021). Contrary to Defendants' contention, therefore, it is *not* clear that Plaintiff "could have filed suit in [Pennsylvania] without any efficiency or convenience concerns" since the hub of this suit is the Commonwealth of Virginia. Defs.' Reply at 15.

Fourth and finally, Plaintiff states that "litigating this case in Virginia would serve the states' interests in efficiently resolving disputes and furthering substantive social policies." Pl.'s Mem. Opp'n at 16; *see also World-Wide Volkswagen*, 444 U.S. at 292. Plaintiff also argues that "no state has a stronger interest than Virginia is [*sic*] adjudicating this dispute, and all states share an interest in ensuring workers are fairly compensated under the FLSA." Pl.'s Mem. Opp'n at 16-17. Defendants do not respond to this factor. Even if other states have interests in adjudicating this dispute, the Court nonetheless finds that a suit grounded in federal law does not implicate "the potential clash of the forum's law with the 'fundamental substantive social policies' of another State" such that the "application of the forum's choice-of-law rules" is a relevant consideration. *Burger King*, 471 U.S. at 477.

Thus, the Court finds that exercising personal jurisdiction over the Contracting NRCDs would not be "so gravely difficult and inconvenient as to place [them] at a severe disadvantage" in this litigation. *CFA Inst.*, 551 F.3d at 296. Accordingly, the Court finds that it has specific personal jurisdiction over the twelve Contracting Non-Resident Corporate Defendants.

---

[7] Defendants submitted a declaration from Defendant Leon in which he contests Plaintiff's allegation that he owns a majority interest in all Corporate Defendants. *Compare* Compl. at ¶ 4 ("Defendant Leon . . . has an ownership interest in every Plaza Restaurant."), *with* Defs.' Reply at Ex. 1, ¶ 2 ("Between the years of 2017 and 2020, I have only ever owned a majority interest in thirteen of the 40+ restaurants."). At this stage in litigation, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). The Court therefore accepts Plaintiff's allegation as true for jurisdictional purposes.

* * *

In sum, the Court finds it lacks personal jurisdiction over Defendant Flores, Defendant Gonzalez, and the nine non-contracting Non-Resident Corporate Defendants. Accordingly, Defendants' Motion to Dismiss Plaintiff's Complaint against Defendant Jose R. Flores, Defendant Juan P. Gonzalez, and the nine non-contracting Non-Resident Corporate Defendants for lack of personal jurisdiction is **GRANTED**. Defendants' Motion to Dismiss Plaintiff's Complaint against the 12 Contracting Non-Resident Corporate Defendants is **DENIED**.

### B. Failure to State a Claim Against Virginia Resident Defendants

Defendants next move to dismiss Plaintiff's Complaint against the Virginia Resident Defendants because they argue that the Complaint only alleges "generalized and conclusory allegations against all 'Defendants,'" rather than "particularized factual allegations against the Virginia Defendants." Defs.' Mem. Supp. at 18. Defendants contend that Plaintiff attempts to "piggyback" off of the "specifics regarding the alleged acts of the Non-Resident Defendants." *Id.* The "Facts Common to All Claims" section of the Complaint, they claim, only uses vague terms such as "'*many* of *their* back-of-the-house employees' or '*many* of *their* employees' without identify[ing] any particular Virginia employee or Virginia [D]efendant." *Id.* at 19 (emphasis in original). Defendants conclude that the Complaint's failure to allege particular facts against Resident Defendants violates Rule 8's notice requirement. *Id.*

The Complaint reveals, however, that Defendants misrepresent the level of detail provided in the allegations and improperly hold Plaintiff to a heightened pleading standard. First, Plaintiff alleges its intent to bring this action "to enjoin the corporate defendants, all of which are doing business as Plaza Azteca . . . from violating" several provisions of the FLSA. Compl. at 2-3. Second, Plaintiff lists all of the Corporate Defendants it refers to when its allegations mention

24

the "Plaza Restaurants." *Id.* at n.1. Third, Plaintiff specifically distinguishes between the actions that Defendant Leon and the Plaza Restaurants took throughout the Complaint, and the relationship between the two. *See e.g., id.* at ¶ 2 ("Under the direction of and with oversight from Defendant Ruben Leon and others, every Plaza Restaurant maintained a policy or practice of paying a predetermined pay amount to back-of-the-house employees, resulting in FLSA overtime, and in some cases minimum wage, violations."). Fourth, the Complaint does not, as Defendants argue, "contain[] only generalized and conclusory allegations against all 'Defendants.'" Defs.' Mem. Supp. at 18. Rather, for each cause of action, Plaintiff specifies which FLSA provisions are at issue, the relevant timeframe the alleged conduct occurred, the specific violations Defendants committed of the relevant provision, and includes specific allegations regarding the actions the Plaza Restaurants took. *See* Compl. at ¶¶ 52-84. Finally, Plaintiff alleges that "Defendants' business activities . . . are and were related and performed through unified operation or common control for a common business purpose and constitute a [single] enterprise," as defined in the Act. *Id.* at ¶ 38. As Defendants themselves acknowledge, "[u]nder the FLSA, a defendant may be *liable* under a theory of enterprise coverage." Defs.' Mem. Supp. at 13 (emphasis added).

Defendants' argument also ignores the fact that "[d]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Indeed, "[f]air notice under Rule 8(a)(2) depends on the type of case." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008); *accord Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (analyzing the notice requirement for a § 1983 qualified immunity case). For FLSA overtime claims, the Fourth Circuit has recognized a lower pleading standard. *See Hall v. DIRECTV, LLC*,

846 F.3d 757, 776-78 (4th Cir. 2017) (adopting a lenient pleading standard for the level of detail a plaintiff must allege regarding hours inadequately compensated in FLSA overtime cases); *see also Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 645 (9th Cir. 2014), *as amended* (Jan. 26, 2015), *cert. denied*, 575 U.S. 979 (2015) ("After all, most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants."). The Court recognizes that Plaintiff alleges claims besides overtime violations, but finds the Fourth Circuit's analysis helpful in evaluating the Complaint as a whole as well. Especially considering the nature of FLSA claims, as well as Plaintiff's allegation that Defendants are liable as a "single enterprise" under the Act, the Court finds meritless Defendants' claim that "the Virginia Defendants are left guessing whether Plaintiff has plead any specific facts of wrongful conduct by them." Defs.' Mem. Supp. at 19. Defendants' reliance on out-of-context case law is therefore unavailing. *See, e.g., Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-cv-591, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (finding plaintiff could not rely on allegations relating to the conduct of "all defendants" because "the individual corporate defendants cannot be liable for one another's tortious conduct" under plaintiff's cause of action). Here, the Complaint explicitly and permissibly alleges that the Virginia Defendants are liable as members of the "Plaza Restaurants" and "single enterprise."

Ultimately, the Court finds that the level of detail in Plaintiff's Complaint "permit the court to infer more than the mere possibility of misconduct" in conformance with Rule 8. *Iqbal*, 556 U.S. at 679 (citing Fed. Rule Civ. Proc. 8(a)(2)). According, Defendants' Motion to Dismiss Plaintiff's Complaint against the Virginia Defendants pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) is **DENIED**.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Specifically, Defendants' Motion to Dismiss Plaintiff's Complaint for lack of personal jurisdiction over Defendants Jose R. Flores, Juan P. Gonzalez, and the nine non-contracting Non-Resident Corporate Defendants is **GRANTED**. Accordingly, the following Defendants remain:

1. RUBEN LEON,
2. PLAZA AZTECA GREAT NECK, INC.,
3. PLAZA AZTECA JEFFERSON, INC. d/b/a PLAZA AZTECA RESTAURANTE MEXICANO (4),
4. PLAZA AZTECA SUFFOLK, INC.,
5. PLAZA AZTECA GRANBY ST., INC.,
6. P.A. LASKIN, INC.,
7. PLAZA AZTECA SHORT PUMP, INC.,
8. DON VALERIO OF STERLING, INC. d/b/a PLAZA AZTECA STERLING,
9. PLAZA AZTECA BROAD, INC.,
10. PLAZA AZTECA DOCK LANDING, INC.,
11. PLAZA AZTECA GAVIOTAS, INC.,
12. P.A. GLEN ALLEN, INC.,
13. PLAZA AZTECA HAMPTON, INC.,
14. MARTINEZ-HAYGOOD, INC. d/b/a PLAZA AZTECA MEXICAN RESTAURANTE,
15. PA PROVIDENCE, INC.,
16. PA SEMINOLE INC.,
17. PLAZA AZTECA WARWICK, INC. d/b/a PLAZA AZTECA (NEWPORT NEWS CI),
18. PA WAYNESBORO, INC.,
19. P.A. WESTCHESTER, INC.,
20. PA WILLIAMSBURG, INC.,
21. PLAZA AZTECA YORKTOWN, INC.,
22. PLAZA AZTECA INC. d/b/a PLAZA AZTECA RESTAURANTE MEXICANO (1),
23. P.A. LEESBURG, INC.,
24. PLAZA AZTECA DENBIGH, INC.,
25. PLAZA AZTECA NORFOLK OUTLET, INC.,
26. P.A. MIDLOTHIAN, INC.,
27. SALSA'S THIMBLE SHOALS INC.,
28. PLAZA AZTECA ROBINSON TOWNSHIP, INC.,
29. PLAZA AZTECA WYOMISSING, INC.,
30. PLAZA STATE COLLEGE, INC.,
31. MONTEREY OF CALIFORNIA, INC.,

32. P. A. GREENVILLE INC.,
33. PA OBX, INC.,
34. PLAZA AZTECA ELIZABETH CITY, INC.,
35. PLAZA AZTECA SICKLERVILLE, INC.,
36. PLAZA AZTECA KING OF PRUSSIA, INC.,
37. PLAZA AZTECA EXTON, INC.,
38. PLAZA AZTECA KENNETT SQUARE, INC., and
39. PLAZA AZTECA PLYMOUTH MEETING, INC.

Defendants' Motion to Dismiss is otherwise **DENIED**. The Court **DIRECTS** the Clerk

to provide a copy of this Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
August /0  , 2022

Raymond A. Jackson
United States District Judge

28